# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH AVILA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COLD SPRING GRANITE COMPANY, a Minnesota Corporation,<br><br>Defendant. | **CASE NO. 1:16-cv-01533-AWI-SKO**<br><br>**ORDER GRANTING MOTION FOR CONDITIONAL PRELIMINARY CLASS CERTIFICATION AND SETTLEMENT APPROVAL**<br><br>**(Docs. 27, 28.)** |

**I. Introduction**

Plaintiff Joseph Avila ("Plaintiff"), on behalf of himself and others similarly situated, filed this class action complaint against Defendant Cold Spring Granite Company ("Defendant"), alleging failures to pay overtime and afford complaint meal breaks, as well as derivative claims, in violation of the California Labor Code, California Business and Professions Code and Industrial Welfare Commission ("IWC") Wage Orders. The parties have reached a settlement prior to class certification. Plaintiff now moves for conditional certification of the proposed class under Rule 23 and preliminary approval of the class action settlement. Motion for Approval of Class Settlement, Doc. 28 ("Doc. 28"). Defendant has filed a notice of non-opposition. For the following reasons, Plaintiff's motion will be granted.

///

1

## II. Background

### A. Factual Background

Defendant is a natural stone manufacturer that operates quarries in the United States and Canada. Doc. 28 at 8; Amended Complaint, Doc. 13 ("FAC") at ¶ 5. Plaintiff and the 87 absent class members are or were Defendant's employees working at quarries in Raymond, California and Clovis, California. FAC at ¶ 11; Doc. 28 at 8. Plaintiff and the absent class members are or were all employed as non-exempt hourly employees. FAC at ¶¶ 2, 11. Defendant instituted an "Alternative Workweek Schedule" ("AWS"), whereby it scheduled class members to work "four ten-hour shifts per week," from 6:00 a.m. to 4:30 p.m. *Id*. at ¶¶ 2, 12; Doc. 28 at 8. Plaintiffs were not paid at an overtime rate when they worked more than eight hours per day. FAC at ¶ 16. "Defendant also failed to provide [class members] with off-duty meal periods prior to the end of their fifth hour of work." *Id*. at ¶¶ 2, 17.

### B. Settlement Agreement

The parties seek conditional certification for "all non-exempt positions at Cold Spring facilities in Raymond, California and Clovis, California" from October 11, 2012 through the date of this order. *See* Settlement Agreement, Doc. 28-1 ("Settlement Agreement") at §A.4-6. The settlement class includes 87 employees. Doc. 28 at 8.

The parties have agreed to a total maximum settlement amount of $500,000.00 to be paid by Defendant. That settlement amount includes class counsel's attorney fees, costs, and any expenses related to the suit. Settlement Agreement at §C.12.a. The settlement provides that attorney fees "shall not exceed $166,666.66 (i.e., 33.33% of" the gross fund). Of the remaining $333,333.34, up to $15,000.00 is allocated to reimburse for costs, up to $5,000.00 is allocated to pay a representative service award to the named plaintiff, $7,500.00 is allocated as a PAGA payment to the LWDA, and $8,500.00 is allocated to pay the settlement administrator's fees and costs.

The remaining balance ("net settlement amount"), assuming the maximum of each allocated amount is paid, will be $297,333.34. That net settlement amount will be distributed to class members in proportion to the weeks each worked during the class period. Settlement

Agreement at §C.12.c.1. More precisely, each class member's settlement payment will be calculated by dividing the class member's weeks worked during the class period by the total weeks worked by all class members during the class period then multiplied by the net settlement amount. *Id.* at §C.12.c.2. In that way, all of the net settlement amount will be paid to class members.

Notice of class settlement will be given by the class administrator after the court preliminarily approves the settlement agreement. That notice will contain a preliminary calculation of the class member's weeks worked. Settlement Agreement at §E.17. Class members will be afforded an opportunity to challenge the calculation of weeks worked if they disagree with Defendant's calculation. *Id.* at §§ E.17, E.20. Class members will also be given instruction regarding the option to opt out or object and outlining the claims released if they do not opt out. *Id.* at §E.21. Any class member who does not validly opt out will be mailed or wired a settlement payment. *Id.* at §E.24. Any unclaimed funds will escheat to the State of California unclaimed wages fund. *Id*.

Class members who do not opt out of the settlement will release "all claims … of every nature and description, whether known or unknown, based on the allegations in the Lawsuit…." Settlement Agreement at §D.15.

### III. Discussion

When settlement of a putative class action takes place prior to class certification the Court must confirm that class certification is appropriate and that the proposed settlement is fair and reasonable.

**A. Rule 23(a) Class Certification Requirements**

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, where, as here, "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Federal courts must pay "undiluted, even heightened, attention" to class certification requirements in a

settlement context. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003). The parties cannot "agree to certify a class that clearly leaves any one requirement unfulfilled," and consequently the court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement. *Berry v. Baca*, 2005 WL 1030248, at *7 (C.D.Cal. May 2, 2005).

Before the court may evaluate a class action settlement under Rule 23(e) of the Federal Rules of Civil Procedure, the settlement class must meet the requirements of Rule 23(a) and (b).Rule 23(a) of the Federal Rule of Civil Procedure lists four criteria that must be met to certify a class action: (1) Numerosity; (2) Commonality of law or fact; (4) Typicality of the representative plaintiff's claims; and (4) Adequacy of representation. A class may only be certified if the court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). The burden is on the party seeking class certification to show that these elements have been met. *Doninger v. Pac. N.W. Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977).

Once subsection (a) is satisfied, the putative class must then fulfill the requirements of Rule 23(b)(3). If subsections (a) and (b) are satisfied, the Court will evaluate whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Pro. 23(e)(1)(C).

<u>1. Numerosity</u>

The class must be so numerous that joinder of all members individually is "impracticable." Fed. R. Civ. P. 23(a)(1). Rule 23's requirement that "the class be so numerous that joinder of all members is impractical does not mean that joinder must be impossible, but rather means only that the court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable." *In re Itel Sec. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981); *accord Baghdasarian v. Amazon.com, Inc.*, 258 F.R.D. 383, 388 (C.D. Cal. 2009) (defining "impracticability" as when joinder of all class members is "difficult or inconvenient"); *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 594 (E.D. Cal. 2008) (holding that "an attempt to join all parties must only be difficult or inconvenient" to

satisfy Rule 23(a)(1)) (citing *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913-914 (9th Cir. 1964)).

No specific numerical threshold is required. *General Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330 (1980). Instead, it "requires examination of the specific facts of each case and imposes no absolute limitations*." General Tel. Co. v. E.E.O.C.*, 446 U.S. at p. 330. Generally, forty or more members will satisfy the numerosity requirement. *Collins v. Cargill Mean Solutions Corp*., 274 F.R.D. 294, 300 (E.D. Cal. 2011); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2nd Cir. 1995).

Here, Plaintiff claims that the proposed class would be composed of 87 members. Doc. 28 at 8. Joinder of all of the putative class members would be impracticable. Numerosity is satisfied.

<u>2. Commonality</u>

Rule 23(a) also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Generally, the commonality requirement is met where "there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). All questions of fact and law need not be common to satisfy the rule. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). However, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury….'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (citing *Falcon*, 457 U.S. at 157). "This does not mean merely that they have all suffered a violation of the same provision of law," rather, "[t]heir claims must depend upon a common contention" the determination of the truth or falsity of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart,* 564 U.S. at 350.

In the wage and hour context, this inquiry is satisfied when the entire class was injured by the same system-wide policy or practice. *See Goodwin v. Winn Management Group LLC,* 2017 WL 3173006,* 5 (E.D. Cal. July 26, 2017) (citation omitted); *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 513 (E.D. Cal. 2014); *Vedachalam v. Tata Consultancy Servs., Ltd.,* 2012 WL 1110004, at *12–*13, (N.D. Cal. April 2, 2012); *In re Taco Bell Wage & Hour Actions*, 2012 WL 5932833, at *6 (E.D. Cal. Nov. 27, 2012). Here, it is agreed that all of the putative class members were subject to the same alternative workweek schedule and meal period policy.

5

Whether class members were entitled to overtime as a result of the four ten-hour shifts created by the alternative work week schedule is a question common to the class. Similarly, whether defendant's policy of not giving meal breaks until noon to class members, all of whom began shifts at 6:00 a.m., was in violation of California law is common to the class.

3. Typicality

The requirement of typicality is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that a class representative "possess the same interest and suffer the same injury" as the putative class. *Falcon,* 457 U.S. at 156. Representative claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. The typicality requirement ensures that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 158, n.13.

Plaintiff claims to have personally suffered all of the injuries giving rise to the claims for potential class members, namely, overtime wage miscalculation, break denial, delay of payment, and inaccurate reporting of payment information. Plaintiff's claims are reasonably coextensive those of the absent potential class members, thus, the typicality requirement is met.

4. Adequacy

The requirement of adequate representation asks whether the representative "will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). Courts are to inquire (1) whether the named plaintiffs and counsel have any conflicts of interest with the rest of the potential class members and (2) whether the named plaintiff and counsel will prosecute the action vigorously for the class as a whole. *See Hanlon,* 150 F.3d at p. 1020.

Plaintiff does not appear to have any conflicts of interest with the rest of the class. Mr. Hoyer and his firm have no apparent conflicts with the class and have been involved as class counsel in numerous wage and hour class actions. Declaration of Richard Hoyer, Doc. 28-1 ("Hoyer Decl.") at ¶¶ 4, 24. The named plaintiff and class counsel are adequate representatives of the class.

**B. Rule 23(b) Class Type**

Plaintiff seeks to have this class certified as a Rule 23(b)(3) class. Rule 23(b)(3) requires: (i) that the questions of law or fact common to class members predominate over any questions affecting only individual members; and (ii) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See Amchem*, 521 U.S. at 615. The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (citation omitted).

1. Predominance

Common questions of law and fact predominate over individual questions, satisfying the first component of the Rule 23(b)(3) inquiry, where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361, 366 (C.D. Cal. 2009) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.* (*In re VisaCheck/MasterMoney Antitrust Litig.*), 280 F.3d 124, 136 (2nd Cir. 2001)); *accord Tyson Foods, Inc. v. Bouaphakeo*, ---U.S. ----, ----, 136 S.Ct. 1036, 1045 (2016) ("The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.") In evaluating predominance, the Court looks to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members. *Id.* "[C]ourts' discomfort with individualized liability issues is assuaged in large part where the plaintiff points to a specific company-wide policy or practice that allegedly gives rise to consistent liability." *Kurihara,* 2007 WL 2501698 at *10. Where there exist "broad employer policies [which] can impact many workers at once … a need for class treatment" is often present. *Sepulveda v. Wal-Mart Stores, Inc.,* 237 F.R.D. 229, 247 (C.D. Cal. 2006).

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (quoting *Erica P. John Fund, Inc., v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). Here, each of Plaintiff's causes of action—failure to pay

7

overtime, failure to afford a meal period, failure to provide accurate wage statements, wait time penalties, UCL violations, and PAGA claims—is tied to Defendant's alternative workweek schedule policy that has had the same impact on all class members. Resolution of the legality of Defendant's policy is the primary issue in this litigation. The predominance requirement is met.

2. Superiority

Rule 23(b)(3) provides that courts should consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Where the parties have agreed to pre-certification settlement (D) and perhaps (C) are irrelevant. *Amchem*, 521 U.S. at 620; *Murillo v. Pac. Gas & Elec. Co.*, 226 F.R.D. 468, 473 (E.D. Cal. 2010).

As will be explained in Section III.D.3, *infra*, the maximum projected individual recovery amount if the action was litigated to a successful verdict is approximately $21,400.00. It is unlikely that such a sum would drive interest in controlling the prosecution of a separate action. Additionally, based on that relatively low recovery amount, it is unlikely that individual actions would be practical since "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Further, this Court is unaware of any concurrent litigation begun by any of the other putative class members regarding Defendant's wage practices.[1] A class action appears to be the superior method of adjudicating Plaintiff's claims.

3. Conclusion

Since the requirements of numerosity, commonality, typicality, and adequacy have been met, and the court has concluded that common questions predominate and class litigation is the superior method of resolving the claims at issue, the court will conditionally certify the class. Based on the parties stipulation and the foregoing discussion this Court conditionally certifies this class for settlement purposes as: all non-exempt positions at Cold Spring facilities in

---

[1] The Court will again consider this factor prior to final approval and after conducting a fairness hearing.

Raymond, California and Clovis, California from October 11, 2012 through the date of this order.

**C. Notice, Release, and Payment Structure**

1. Notice Plan

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B), 23(e)(1). The absent class members must be provided with notice, an opportunity to be heard, and a right to opt out of the class. *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 349 (2011). Rule 23(c)(2)(B) provides, in relevant part that "[t]he notice must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Adequate notice is critical to court approval of a class action settlement under Rule 23(c)(2)(B).… [B]oth the content of the notice and the form of the notice must be adequate and approved by the Court." *Monterrubio,* 291 F.R.D. 443, 452 (E.D. Cal. 2013) (internal citation omitted).

Notice mailed to the last known address of each putative class member and use of a skip trace for each return satisfies the procedural of the notice requirement. *See* Settlement Agreement at § E.16-17. The notice packet contains the information required by Rule 23(c)(2)(B). *See* Doc. 28-1 at 30-36. The proposed notice is adequate.

2. Notice Schedule

The Court has reviewed Plaintiff's proposed notice schedule. Doc. 28 at 26-27. The Court agrees that the proposed notice schedule is appropriate. It will be implemented as follows:

| | |
|---|---|
| Date of preliminary approval of the Settlement as to Class and approval of the Settlement as to the Collective | August 15, 2017 |
| Defendant to provide to CPT a database | August 29, 2017 |

| | |
|---|---|
| containing CMs' contact information | |
| CPT to Mail the Notices. | September 12, 2017 |
| Deadline to postmark requests to opt-out, objections to Settlement, or dispute the information shown in Class Notice pursuant to the instructions set forth in the Class Notice | October 27, 2017 |
| Filing Deadlines for Final Approval Motion and Fees Motion | November 20, 2017 |
| CPT to provide all counsel with a declaration attesting to completion of the Notice process | November 13, 2017 |
| Class Counsel to file CPT's verification that the Class Notice has been completed | December 6, 2017 |
| Final Approval Hearing | December 11, 2017 |
| Effective Date | Reserved for decision in Order regarding Final Approval Hearing |
| Defendant to wire the Total Settlement Amount | 14 business days after effective date |
| Fees and costs, Class Representative Award, Class awards, LWDA payment to be paid by CPT | No later than 14 calendar days after receipt of funds from Defendant |
| CPT to stop payment on checks for CMs that do not timely opt-out and so receive a payment, but do not cash settlement check and transmit funds to the State of California's Unclaimed Wages Fund | 120 days after issuance of awards. |

3. Scope of Release

Class action settlement agreements cannot release claims of absent class members that are unrelated to the factual allegations of the class complaint. *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) Class action settlements may, and often do, commonly release concealed or hidden claims related to the facts alleged. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 2212780, *11 (N.D. Cal. May 17, 2017) (collecting cases). In this action, the release is as broad as permissible. If a class member does not opt out, he or she releases all claims "of every nature…, whether known or unknown, based on the allegations of the [FAC]," and occurring within the class period. Doc. 28-1 at 33. Although broad, the release is not overly broad.

///

4. Class Member Payment Structure

The Rule 23 settlement class in this action is an opt out class (meaning that the settlement will bind all of Defendant's employees who receive notice and fall within the class member definition unless the employee opts out). If a class member does not opt out, he or she receives a payment from the net fund. If a payment made to a class member is not deposited within 120 days, the payment will escheat to the state rather than reverting to the defendant. Settlement Agreement at § E.24. The payment process is not unfair. *See De Leon v. Bank of Am., N.A.*, 2012 WL 2568142, at *20 (M.D. Fla. Apr. 20, 2012) (quoting 2010 version of the "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" produced by the Federal Judicial Center) ("In too many cases, the parties may negotiate a claims process which serves as a choke on the total amount paid to class members. When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms.")

**D. Fundamental Fairness, Adequacy, and Reasonableness of the Settlement Agreement**

In order for this settlement to be approved, Plaintiff must demonstrate that the proposed settlement is fundamentally fair, adequate, and reasonable. *Hanlon*, 150 F.3d at 1026 (citation omitted); *see* Fed. R. Civ. P. 23(e). "Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Id* at 1026 (citation omitted).

When the settlement takes place before formal class certification, as it has in this instance, settlement approval requires a "higher standard of fairness"; consideration of the *Hanlon* factors in not enough. *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026). This more exacting review of class settlements reached before formal class certification is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who

class counsel had a duty to represent." *Id*. To that end, the Ninth Circuit in *In re Bluetooth*, 654 F.3d 935, 947 (9th Cir. 2011) ("Bluetooth"), identified three "subtle signs that class counsel have allowed pursuit of their own self-interests … infect the negotiations": (1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a possible reversion of unclaimed fees to the defendant. *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (quoting *Bluetooth*, 654 F.3d at 947).

At the preliminary approval stage, the Court's consideration of the above-articulated inquiries is less probing than required for final approval; it may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *In re Tableware Antitrust Litigation*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litg., Second § 30.44 (1985)).

1. The Strength of Plaintiff's Case

When evaluating the strength of a case, the Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d 964, 975 (E.D. Cal. 2012) (citation omitted). That in mind, the court need "not reach 'any conclusions regarding the contested issues of fact and law that underlie the merits of th[e] litigation.'" *Brewer v. Salyer*, 2012 WL 2813178, *3 (E.D. Cal. June 29, 2017) (citation omitted).

Plaintiff identifies this consideration but offers no position on the strengths or weaknesses of his case. Doc. 28 at 17. At most, Plaintiff's counsel includes a single conclusory sentence indicating that "[t]he [p]arties were able to accurately assess the legal and factual issue that would arise if the case proceeded to trial." Hoyer Decl. at ¶ 29; Doc. 28 at 19. Despite Plaintiff's failure, the Court can glean from the filings that Defendant may have instituted its alternative

workweek schedule policy only in response to an election by employees. *See* Doc. 28 at 8. Although the date of the election is not clear, the documents relating to the election were not filed with the DIR until October 21, 2016. Further, it appears from the class notice that Defendant takes the position that it did provide compliant meal period opportunities and that any delay in taking meal breaks was a result of employee choice. The potential weaknesses in Plaintiff's case tend to weigh in favor of approving a settlement agreement.

2. The Risk, Expense, Complexity, and likely Duration of Further Litigation and The Risk of Maintaining Class Action Status throughout Trial

"Approval of settlement is 'preferable to lengthy and expensive litigation with uncertain results.'" *Munoz v. Giumarra Vineyards Corp.*, 2017 WL 26605075, *9 (E.D. Cal. June 21, 2017) (citation omitted); *accord In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong policy that favors settlements, particularly where complex class action litigation is concerned.") Moreover, "[e]mployment law class actions are, by their nature, time-consuming and expensive to litigate." *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, *3 (E.D. Cal May 19, 2017).

While this wage and hour litigation is not particularly complex, Plaintiff estimates that fees and costs to litigate the action would exceed $1,000,000.00, as a result of additional discovery, deposition of experts and witnesses, and trial preparation. Plaintiff's counsel also notes the risk involved in seeking non-mandatory PAGA penalties. Further, since this action has not progressed far past its infancy, the Court would estimate that any trial would not take place for at least two years.

In addition to litigation related risks and expenses, putative class actions often fails at the certification stage. Despite the conditional certification discussed above, the risk of non-certification is significantly magnified if Defendant presents evidence that its alternative workweek schedule did not consistently result in denial of meal periods on a class-wide basis (a position that appears likely from the proposed class notice packet). *See* Doc. 28-1 at 31.

The risks and costs of further litigation, and the potential risks attendant to a contested class certification, weigh in favor of approval of the settlement agreement.

3. The Amount Offered in Settlement

The amount offered in settlement is generally considered to be the most important considerations of any class settlement. *See Bayat v. Bank of the West*, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing, *inter alia*, *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178-79 (9th Cir. 2013). To determine whether that settlement amount is reasonable, the Court must consider the amount obtained in recovery against the estimated value of the class claims if successfully litigated. *Litty v. Merrill Lynch & Co.*, Inc., 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (quoting *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)); *see also Officers for Justice v. Civil Service Com'n of City and Cty. Of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982) ("[A] cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.") Courts regularly approve class settlements where class members recover less than one quarter of the maximum potential recovery amount. *See Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, *10 (C.D. Cal. Feb.16, 2017) (approving a settlement where net recovery to class members was approximately 7.5% of the projected maximum recovery amount); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal 2015) (approving a settlement where the gross recovery to the class was approximately 8.5% of the maximum recovery amount).

Here, the common fund recovery amount, $500,000.00 is roughly 11% of Plaintiff's projected maximum gross recovery amount of $4,441,633.60. *See* Hoyer Decl. at ¶9. The low-end net recovery amount (less attorney fees and costs), $297,333.34, is roughly 6.7% of Plaintiff's projected maximum recovery amount. Although the recovery amounts are relatively low in proportion to the maximum possible recovery, it is significant to note that a large portion of the maximum recovery amount does not translate to recovery for class members; much of the total projected liability is made up of PAGA penalties which are largely discretionary, and 75% of which would be distributed to the California Labor and Workforce Development Agency ("LWDA"). *See* Cal. Lab. Code § 2699(e)(2), (*i*). The low-end net settlement recovery amount (less attorney fees and costs) of $297,333.34 is roughly 16% of the maximum net recovery to the class, roughly $1,862,607.00 (the gross fund amount less LWDA payments and a 25% attorney

14

fee award). Instead of recovering the maximum average amount of approximately $21,400.00 each, each class member will recover the average of approximately $3,417.00. Although the settlement amount is relatively modest, the Court cannot conclude that the proposed settlement amount is unfair. This factor does not weigh against settlement.

4. The Extent of Discovery Completed

The Court should lean in favor of a settlement where evidence is presented that a considerable amount of discovery has been conducted "because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Adoma*, 913 F.Supp.2d at 977 (citation omitted).

Plaintiff and Defendant engaged in mediation in this action. Doc. 28 at 9. As a condition of that mediation, "Plaintiff required Defendant to provide a dataset sufficient to prepare a full exposure analysis, and documents related to the" alternative workweek schedule. *Id*. at 9, 19; Hoyer Decl. at ¶ 7. Defendant provided Plaintiff's counsel "the full data for all class members … so the damages were calculated for each individual" class member. Doc. 28 at 9; *see* Hoyer Decl. at ¶ 9. The parties have engaged in enough discovery to have a full understanding of the legal and factual issues underlying this action. The factor weighs in favor of approving the settlement.

5. The Experience and Views of Counsel

As addressed above, class counsel is experienced in wage and hour class action litigation. He believes that "the result is well within the reasonable standard when considering the difficulty and risks presented by pursuing further litigation." Hoyer Decl. at ¶ 27; *see* Settlement Agreement at § B.10.. The recommendation that the settlement be approved is entitled to significant weight and supports approval of the agreement. *See Nat'l Rural Telecomms*., 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation"). This consideration weighs in favor of approval of the settlement agreement.

6. The Absence of Subtle Signs of Collusion

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of some class

members at the expense of others. *Staton*, 327 F.3d at 960. First, the Court looks to whether class counsel would receive a disproportionate distribution of the settlement. Counsel seeks 33.33% of the gross fund—$166,666.67 in fees. The settlement agreement guarantees the putative class approximately 60% of the gross fund – $297,333.34. The attorney fee amount, although significantly above the benchmark for this Circuit, *see Bluetooth*, 654 F.3d at 947 (setting a 25% benchmark); *Staton*, 327 F.3d at 952 (same); *Six (6) Mexican Workers*, 904 F.2d at 1311 (same), is not unreasonable as an upper bound.

Second, the settlement agreement contains no clear sailing provision—a provision providing for the payment of attorney fees separate and apart from class funds. *See Bluetooth*, 654 F.3d at 947-948. Class counsel's recovery is contingent upon class recovery.

Third, there is no possibility of unclaimed funds reverting to Defendant.

In addition to the above considerations, it is appropriate for the court to consider the procedure by which the parties arrived at their settlement to determine whether the settlement is truly the product of arm's length bargaining, rather than the product of collusion or fraud. *See Chun-Hoon v. McKee Foods Corp.*, 716 F.Supp.2d 848, 851 (citing Manual for Complex Litigation (Fourth) § 21.6 (2004)). The use of mediators, though not dispositive, supports a finding that the settlement agreement is not the product of collusion. *In re Bluetooth,* 654 F.3d at 948; *Placios v. Penny Newman Grain, Inc.*, 2015 WL 4078135 (E.D. Cal. July 6, 2015) (citation omitted); *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012). In this case, the parties arrived at a settlement with the help of a mediator.

The subtle signs of collusion identified by the Ninth Circuit are absent here. This consideration does not weight against settlement.

*7. Conclusion*

The Court is convinced that the settlement agreement falls within the range of possible approval. It will be preliminarily approved.

**E. Attorney Fees and Class Representative Award**

As the Court earlier alluded to, it has some concern regarding class counsel's anticipated request for attorneys' fees based on one-third of the net settlement fund in light of the fact that

the benchmark for such an award is twenty-five percent.[2] *See Bluetooth,* 654 F.3d at 942. Despite this concern, the Court need not resolve this matter at the preliminary approval stage, since the propriety of the fee request is an issue that can be determined at the Final Fairness Hearing. However, Plaintiffs' counsel should be mindful of this issue and should be prepared to present an updated lodestar calculation in connection with their motion for attorneys' fees and for final approval.

Incentive awards for class representatives "are fairly typical in class action cases" and appropriate in wage-and-hour actions where plaintiffs undertake a significant "reputational risk." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). The reasonableness of a representative award is determined by considering the proportionality between the award to the representative and to the class. At this stage of the proceedings, and considering the estimated average per-class-member recovery of $3,417.00, a service award of $5,000.00 would be well within the realm of reasonableness. *See Willner v. Manpower Inc.*, 2015 WL 3863625, at *8-9 (N.D. Cal. June 22, 2015); *see also Richarson v. THD at Home Services, Inc.,* 2016 WL 1366952, *13 (E.D. Cal. Apr. 6, 2016) (citing *Harris v. Vector Marketing Corp.*, 2012 WL 381202, at *7 (N.D. Cal. Oct. 22, 2012)) (holding that a $5,000.00 service award is presumptively reasonable).

### IV. Order

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for conditional class action certification and preliminary approval of class action settlement is GRANTED;
2. The class is conditionally certified and defined as follows: "all individuals who work or worked in a Covered Position (as defined in the Settlement Agreement) during the Covered Time Frame (as defined in the Settlement Agreement) and who do not validly exclude themselves from this settlement";
3. The Court hereby authorizes the retention of CPT Group as Settlement Administrator for

---

[2] The fact that class counsel's present lodestar calculation is $65,000.00 magnifies the concern that class counsel seeks $166,666.67. At this stage, the Court would expect most of the work to already have been completed.

the purpose of the Settlement with reasonable administration costs estimated not to exceed $8,500.00;

4. The Court hereby conditionally appoints Hoyer & Hicks, and United Employees Law Group, P.C. as counsel for the class, and Plaintiff as class representative for the class;

5. The Court hereby APPROVES the Class Notice Package, Doc. 28-1 at Exhibits 2 and 3;

6. The parties SHALL implement the notice schedule as set forth in Section III.C.2, *supra*;

7. Class counsel SHALL file a motion for Final Approval of the Settlement and for approval of the Fee and Costs Award and the Service Payment, with the appropriate declarations, supporting evidence, any objections, and any requests for exclusion by November 20, 2017;

8. The parties SHALL appear on December 11, 2017 at 1:30 p.m. in Courtroom 2 of the United States District Court, Eastern District, Fresno Division, before the undersigned for a final settlement approval hearing, which may include consideration of the following:

    a. Objections to the proposed settlement by class members mailed to the Claims Administrator with a postmark of no later than forty-five (45) days from the date the Notices are first mailed;

    b. Responses by class counsel and counsel for Defendant to any objections timely filed by the class members and to provide other information, as appropriate, bearing on whether or not the settlement should be approved;

    c. Responses by class counsel to any questions regarding its request for fees and costs, as well as the application for class representative service award.

IT IS SO ORDERED.

Dated:   August 15, 2017                              _____
                                                     SENIOR DISTRICT JUDGE