**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

JOSEPH AVILA, on behalf of himself
and others similarly situated,

                  Plaintiff,

    v.

COLD SPRING GRANITE
COMPANY, a Minnesota Corporation,

            Defendants.

_____/

1:16-cv-001533-AWI-SKO

**ORDER GRANTING MOTION FOR
FINAL APPROVAL OF CLASS
ACTION SETTLEMENT**

**ORDER GRANTING IN PART
MOTION FOR ATTORNEYS' FEES,
COSTS, AND REPRESENTATIVE
SERVICE PAYMENT**

(Docs. 32, 33.)

## I. Introduction

Plaintiff Joseph Avila ("Plaintiff"), on behalf of himself and others similarly situated, filed this class action complaint against Defendant Cold Spring Granite Company ("Defendant"), alleging failures to pay overtime and afford compliant meal breaks, as well as derivative claims, in violation of the California Labor Code, California Business and Professions Code and Industrial Welfare Commission ("IWC") Wage Orders. The parties have reached a settlement prior to class certification. Plaintiff moved for and the Court granted conditional certification of the class under Rule 23 and preliminary approval of the class action settlement. Docs. 28, 31. In the Court's preliminary approval order, it set out a schedule of dates for giving of class notice, filing of a final approval motion, and holding of a final fairness hearing. All of those events have taken place. Plaintiff filed unopposed motions for final approval of class settlement and for attorney fees and costs. No

class member was present at the final fairness hearing held on December 11, 2017, and no

objections to the settlement have been filed. For the following reasons, Plaintiff's motion for

final approval will be granted in full and Plaintiff's motion for fees and costs will be granted in

part.

## II. Background

### A. Factual Background

Defendant is a natural stone manufacturer that operates quarries in the United States and

Canada. Doc. 28 at 8; Amended Complaint, Doc. 13 ("FAC") at ¶ 5. Plaintiff and the 89[1] absent

class members are or were Defendant's employees working at quarries in Raymond, California

and Clovis, California. FAC at ¶ 11; Doc. 28 at 8. Plaintiff and the absent class members are or

were all employed as non-exempt hourly employees. FAC at ¶¶ 2, 11. Defendant instituted an

"Alternative Workweek Schedule" ("AWS"), whereby it scheduled class members to work "four

ten-hour shifts per week," from 6:00 a.m. to 4:30 p.m. *Id.* at ¶¶ 2, 12; Doc. 28 at 8. Plaintiffs

were not paid at an overtime rate when they worked more than eight hours per day. FAC at ¶ 16.

"Defendant also failed to provide [class members] with off-duty meal periods prior to the end of

their fifth hour of work." *Id.* at ¶¶ 2, 17.

### B. Settlement Agreement and Anticipated Result

The preliminary approved class definition is as follows: "all non-exempt positions at

Cold Spring facilities in Raymond, California and Clovis, California" from October 11, 2012

through August 16, 2017 (the date of conditional class certification and preliminary approval of

class action settlement). *See* Settlement Agreement, Doc. 28-1 ("Settlement Agreement") at

§A.4-6; Doc. 31. The settlement class includes 89 employees. Doc. 35 at 3. No class member has

opted-out. Doc. 35 at 3.

The parties have agreed to a total maximum settlement amount of $500,000.00 to be paid

by Defendant. That settlement amount includes class counsel's attorney fees, costs, and any

---

[1] Originally Plaintiff indicated that there were 87 putative class members. Although counsel intermittently refers to 87 and 89 class members, Doc. 32 at 7, 9, 12, 17, the majority of the documents submitted reflect the existence of 89 class members. *See* Docs. 32, 32-1, 32-2, 35. The calculation of average class member recovery also tends to indicate the existence of 89 class members. *See* Doc. 35.

expenses related to the suit. Settlement Agreement at §C.12.a. The settlement provides that attorney fees "shall not exceed $166,666.66 (i.e., 33.33% of" the gross fund). Of the remaining $333,333.34, up to $15,000.00 is allocated to reimburse for costs, up to $5,000.00 is allocated to pay a representative service award to the named plaintiff, $7,500.00 is allocated as a PAGA payment to the LWDA, and $8,500.00 is allocated to pay the settlement administrator's fees and costs.

The remaining balance ("net settlement amount"), assuming the maximum of each allocated amount is paid, will be $297,333.34. That net settlement amount will be distributed to class members in proportion to the weeks each worked during the class period. Settlement Agreement at §C.12.c.1. More precisely, each class member's settlement payment will be calculated by dividing the class member's weeks worked during the class period by the total weeks worked by all class members during the class period then multiplied by the net settlement amount. *Id*. at §C.12.c.2. In that way, all of the net settlement amount will be paid to class members. The average payment is $3,340.82 per class member. Doc. 45 at 3.

Class members are not required to take any action to receive their pro rata share of the settlement fund. If the settlement is approved, a check will be mailed to the address on file for each class member. In exchange, each of the class members will release all claims that were or could have been asserted based on the allegations of the operative complaint—i.e., those claims relating to an improper alternative workweek schedule or untimely meal or rest periods. No class member has opted out of the settlement agreement.

Any settlement checks not cashed or deposited within 120 days of issuance will be transmitted to the State of California's Department of Industrial Relations Unclaimed Wages Fund.

### C. Final Fairness Hearing

The Court held a final fairness hearing on December 11, 2017 at 1:30 p.m. No class member was present. No objections were raised to the settlement.

///

///

# III. Final Approval of Settlement Agreement

## *A. Legal Standard*

"There is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (citation and internal quotation marks omitted).   However, "[t]he claims, issues, or defenses of a certified class may be settled … only with the court's approval" "after a hearing and on a finding that it is fair, reasonable, and adequate." Fed. Civ. P. 23(e). When a settlement is reached by the parties prior to certification of a class, the court must confirm "the propriety of the [class] certification and the fairness of the settlement" to protect the absent class members. *Stanton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see In re Bluetooth Headset Prods. Liab. Litig.* ("*In re Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2011) (When settlements are reached prior to certification "an even higher level of scrutiny" is required to determine the fairness of the agreement.); *In re Mego Fin. Corp. Sec. Litig.* ("*In re Mego*"), 213 F.3d 454, 458 (9th Cir. 2000) (same).

The Rule 23 class settlement generally proceeds in two phases. In the first phase, the court conditionally certifies the class, conducts a preliminary determination of the fairness of the settlement (subject to a more stringent final review), and approves the notice to be imparted upon the class. *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014). The purpose of the initial review is to ensure that an appropriate class exists and that the agreement is non-collusive, without obvious deficiencies, and within the range of possible approval as to that class. *See True v. Am. Honda Motor Co.*, 749 F.Supp.2d 1052, 1062 (C.D. Cal. 2010); Newberg on Class Actions § 13:13 (5th ed. 2014). In the second phase, the court holds a full fairness hearing where class members may present objections to class certification or to the fairness of the settlement agreement. *Ontiveros*, 303 F.R.D. at 363 (citing *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989). Following the fairness hearing, taking into account all of the information before the court, the court must confirm that class certification is appropriate and the settlement is fair, reasonable, and adequate such that the parties should be allowed to settle the class action pursuant to the terms of the settlement agreement. *See Valdez v. Neil Jones Food*

*Co.*, 2015 WL 6697926 (E.D. Cal. Nov. 2, 2015); *Miller v. CEVA Logistics USA, Inc.*, 2015 WL 4730176, *3 (E.D. Cal. Aug. 10, 2015).

**B. Discussion**

This Court has conducted a final fairness hearing. No class member was present at the hearing and no objections have been filed. Despite the absence of objections, the Court has conducted an in-depth review of the settlement agreement in this action. Conditional class certification is appropriate. The proposed settlement is fair, reasonable, and adequate. The attorneys' fees, costs, and representative service award are all reasonable and justified by the evidence presented. For those reasons, as more fully set out herein, Plaintiff's motions for final approval and fees, costs and service award will be granted.

*1. Rule 23 Class Certification*

Class certification requires a showing of two sets of requirements. First, Rule 23(a) requires a showing of numerosity, commonality of law or fact, typicality of the representative plaintiff's claims, and adequacy of representation. Fed. R. Civ. P. 23(a) Second, the action must fit within one of the "types of actions" set forth by Rule 23(b). Fed. R. Civ. P. 23(b).

In the Court's August 16, 2017 order, it thoroughly considered each of the Rule 23(a) requirements and found that this action appropriately fell within Rule 23(b)(3). Based on the Court's consideration of the Rule 23 requirements at the preliminary approval stage in combination with the information provided in Plaintiff's motion for final approval, the Court is satisfied that the Rule 23(a) requirements are met, that common issues predominate and that a class action is the superior vehicle to litigate the claims at issue in this action.

*a. Numerosity*

A class need only be so numerous that joinder of all members individually is impracticable. Fed. R. Civ. P. 23(a)(1). In this litigation, this Court found that the class comprising of 87[2] members is sufficiently numerous that joinder of all members would be impracticable. Doc. 31 at 5. The class is sufficiently numerous.

---

[2] Again, it appears that the class is comprised of 89 members. This difference is without significance for purposes of this section.

*b. Commonality and Typicality*

In its August 16, 2017 order, the Court explained that, in the wage and hour context, commonality is satisfied when all class members are injured by the same class-wide policy or practice. Doc. 31 at 5 (citations omitted). In this action, it was agreed that all class members were subject to the same alternative workweek schedule that caused the alleged underpayment of minimum wage and meal and rest break violations. *Id.*

The typicality requirement is satisfied if "the claims and defenses of the representative parties are typical of the defenses of the class…." Fed. R. Civ. P. 23(a)(3). Effectively, the typicality inquiry is whether the representative's claims are "reasonably co-extensive with those of the absent class members…." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In this instance, Plaintiff has shown that the class members all suffered under the same policy. Although the extent of the injury varied from member to member, the injuries all arose from the same course of conduct by Defendant. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Plaintiff's claims are reasonably co-extensive with those of the class. The typicality requirement is met.

*c. Adequacy*

The adequacy requirement is met if the class representative and class counsel "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two questions are normally asked to determine adequacy: "(1) do the named plaintiff[] and [his] counsel have any conflicts of interest with other class members and (2) will the named plaintiff[] and [his] counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Because Plaintiff and the class have been injured by the same policy and seek to recover the same damages, there is no indication that any conflict exists between Plaintiff and the class. Similarly, there is no indication that class counsel has any conflict of interest with the class. Next, the named plaintiff and class counsel have diligently pursued relief in this action and have arrived at a favorable settlement, as discussed in more depth below. The adequacy requirement is met.

All of the Rule 23(a) requirements are satisfied.

*///*

*d. Predominance and Superiority*

The matter was conditional certified at the preliminary approval phase as a Rule 23(b)(3) class. Doc. 31 at 7-9. In order to maintain a Rule 23(b)(3) class action the court must find that (1) the common questions of law or fact predominate over issues affecting only individual members and (2) that a class action is the superior vehicle for litigating the claims at issue. Fed. R. Civ. P. 23(b)(3). The Court made such a finding. Specifically, in its August 16, 2017 order, this Court observed that common questions of law and fact predominated over the individual issues and that—based on the relatively small maximum claim value—a class action is the superior method of adjudicating the claims presented. Doc. 47 at 13-14. Those determinations remain; common questions predominate and a class action is the superior vehicle for litigation of the claims at issue.

Conditional certification of the Rule 23 class is confirmed for the following class:

> All non-exempt positions at Cold Spring facilities in Raymond, California and Clovis, California from October 11, 2012 through [August 16, 2017].

Doc. 31 at 8-9.

*2. Sufficiency of the Notice Afforded*

Before a proposed settlement is approved, Rule 23(c)(2)(b) and (e)(1) require the Court to ensure that notice is directed "in a reasonable manner to all class members who would be bound by the" proposed settlement and that such notice provides the information necessary to make an informed decision regarding participation in the action. As described in the Court's October 8, 2015 order, additional explanation of the claims is necessary when a settlement purports to resolve FLSA and California Labor Code claims in a hybrid action. Doc. 47 at 17 (citing *Murillo*, 266, F.R.D. at 472). The Court previously approved the substance of the notice packet, noting that it informed class members of "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the

binding effect of a class judgment on members under Rule 23(c)(3)." *See* Doc. 31 at 9 (citing Fed. R. Civ. P. 23(c)(2)(B)). *See* Doc. 35 at 6-12 (notice packet).

In addition to the sufficiency of the content of the notice given, the process for giving notice was also adequate. Prior to mailing the notices, the Claims Administrator ran the class list through the United States Postal Service's National Change of Address database ("NCOA"), and performed address searches using electronic resources which collect data from various sources such as utility records, property tax records, motor vehicle registration records and credit bureaus. None of the notices distributed have been returned as undeliverable. *See* Doc. 35. The Claims Administrator received 18 telephone calls from class members. *Id.*

The Court is satisfied that the notice given was substantively sufficient and sent in a manner calculated to impart notice.

### 3. Settlement Agreement Fairness

In order for this settlement to be approved, Plaintiff must demonstrate that the proposed settlement is fundamentally fair, adequate, and reasonable. *Hanlon*, 150 F.3d at 1026 (citation omitted); *see* Fed. R. Civ. P. 23(e). In conducting a fairness determination pursuant to Rule 23(e) the Court considers: "(1) the strength of the plaintiff's case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting, *inter alia*, *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). When settlement occurs before class certification the court must take extra care to ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth*, 654 F.3d at 946.

### a. The Strength of Plaintiff's Case

The first factor, the strength of Plaintiff's case, favors settlement. When evaluating the strength of a case, the Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these

agreements." *Adoma v. Univ. of Phoenix, Inc*., 913 F.Supp.2d 964, 975 (E.D. Cal. 2012) (citation omitted). Class Counsel notes in his declaration that all claims rise and fall with the validity alternative work schedule and meal period claim. Doc. 32-1 at 12-13. Although Plaintiff believes that the alternative work schedule "was unlawful … as there was no record available of any ballot approving [it,] Defendant produced declarations and other evidence … suggest[ing] that defendant had" conducted a ballot. Doc. 31-1 at 13. Despite the evidence that a ballot may have taken place, there was a technical failure by Defendant in implementing its alternative work schedule because no documents related to that election were on file with the Department of Industrial Relations ("DIR") until October 21, 2016.

As to Plaintiff's meal period claim, Plaintiff acknowledges that many class members submitted declarations indicating that they were permitted to take meal periods "whenever they wanted." Doc. 32-1 at 14. However, Plaintiff also maintains that the noontime cessation of operation at Defendant's quarries, which was designed to allow for a meal period, took place after the fifth hour of work and therefore resulted in regular delays in the class members' ability to take timely meal periods. Doc. 32-1 at 14.

The parties have probed the strengths and weaknesses of Plaintiff's case. Settlement is a reasonable decision in this instance. This factor favors settlement.

*b. The Risk, Expense, Complexity, and Likely Duration of Further Litigation and the Risk of Maintaining Class Status*

"Approval of settlement is 'preferable to lengthy and expensive litigation with uncertain results.'" *Munoz v. Giumarra Vineyards Corp.*, 2017 WL 26605075, *9 (E.D. Cal. June 21, 2017) (citation omitted); *accord In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong policy that favors settlements, particularly where complex class action litigation is concerned.") Moreover, "[e]mployment law class actions are, by their nature, time-consuming and expensive to litigate." *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, *3 (E.D. Cal. May 19, 2017).

As noted in prior section, Plaintiff's case is not without weaknesses. Litigating those claims would risk failures in class certification (depending on the regularity of the alleged

9

violations) and failures on the merits. *See* Doc. 32-1 at 17; Doc. 31 at 13. The Court also credits Class counsel's estimation that litigating the class action through a contested certification, further discovery, dispositive motions, and a possible trial would exceed $1,000,000.00 in attorney fees and costs. Doc. 32-1 at 17. Although not overly complicated, if this action were not to be settled the class member would be highly unlikely to see any relief within two years, if ever.

The risk, costs, and delayed recovery inherent in further litigation weigh in favor of settlement.

*c. The Amount Offered in Settlement*

The amount offered in settlement is generally considered to be the most important considerations of any class settlement. *See Bayat v. Bank of the West*, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing, *inter alia*, *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178-79 (9th Cir. 2013). To determine whether that settlement amount is reasonable, the Court must consider the amount obtained in recovery against the estimated value of the class claims if successfully litigated. *Litty v. Merrill Lynch & Co., Inc.*, 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (quoting *In re Mego*, 213 F.3d at 459). Courts regularly approve class settlements where class members recover less than one quarter of the maximum potential recovery amount. *See Bravo v. Gale Triangle, Inc*., 2017 WL 708766, *10 (C.D. Cal. Feb.16, 2017) (approving a settlement where net recovery to class members was approximately 7.5% of the projected maximum recovery amount); *Officers for Justice v. Civil Service Com'n of City and Cty. of S.F.,* 688 F.2d 615, 628 (9th Cir. 1982) ("[A] cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.")

Class counsel has approximated (and explained the mechanism for that approximation) that the total maximum recovery in this matter at roughly $4,441,633.60, inclusive of penalties and interest. Doc. 32-1 at 6. Of that amount, $2,610,874.85 is potential PAGA penalties. Because the PAGA penalties sought are at least partially duplicative of penalties granted by the underlying Labor Code violations, *see*, *e.g.*, Cal. Lab. Code §§ 203, 226, 558(a), 1194.2, and because a Court has discretion in whether and in what amount to award PAGA penalties, *see* Cal. Lab. Code § 2699(e)(2), Plaintiff recognizes that the potential PAGA penalties are highly

uncertain. *See Guifu Li v. A Perfect Day Franchise, Inc.*, 2012 WL 2236752, *17 (N.D. Cal. June 15, 2012).

The gross settlement amount is $500,000.00, of which $297,332.98 will be distributed to the class. There is no possible reversion. The claims administrator has calculated that the average settlement payment will be $3,340.82. Doc. 35 at 3. The settlement amount that will actually be disbursed to the class members is approximately seven percent of the predicted maximum recovery amount. Excluding the highly uncertain PAGA penalties, the net settlement amount is roughly 16% of the more realistic maximum recovery amount. That settlement amount is within the acceptable range, albeit at the low end. *See, e.g.*, *Garnett v. ADT, LLC*, 2016 WL 1572954, *7 (E.D. Cal. Apr. 19, 2016) (approving a settlement agreement with a class payment of roughly 21 percent of the maximum potential recovery amount); *Rosales v. El Rancho Farms*, 2015 WL 4460918, at *14 (E.D. Cal. July 21, 2015) (twenty five percent); *In re Celera Corporation Securities Litigation*, 2015 WL 1482303, at *6 (N.D. Cal. Mar. 31, 2015) (eight percent).

This factor supports approval of the settlement.

*d. The Extent of Discovery Complete and Stage of the Proceedings*

Courts require the parties to have conducted sufficient discovery to be able to make an informed decision about the value and risks of the action and come to a fair settlement. *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998); *Adoma*, 913 F.Supp.2d at 977. Although no formal discovery was conducted, class counsel emphasizes that Defendant "provided a dataset sufficient to prepare a full exposure analysis, [] documents related to the" alternative work schedule, documents related to Defendant's employment policies, and information regarding the hours and wages of "nearly all" class members. Doc. 32-1 at 5.

In this matter, the parties conducted sufficient discovery to be able to make an informed decision about settlement. This factor supports approval of the settlement agreement.

*e. The Experience and Views of Counsel*

The Court must consider the experience and views of counsel regarding the settlement. *See Churchill Vill.*, 361 F.3d 575; *Nat'l Rural Telecomms*., 221 F.R.D. 523, 528 (C.D. Cal. 2004). Class counsel is experienced, *see* Doc. 32-1 at 2-4, and is informed about the subject of

this litigation, *see generally* Doc. 32-1. Class counsel recommends settlement and "believes that [it] will provide a substantial benefit to the" class. This factor weighs in favor of settlement.[3] Doc. 32 at 21.

*f. The Reaction of the Class Members*

In determining the fairness of a settlement, the Court should consider class member objections to the settlement and the claims rate. *See Larsen v. Trader Joes Co.*, 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014). The absence of a large number of objections to a proposed settlement raises a strong presumption that the terms of the agreement are favorable to the class. *Richardson v. THD At-Home Services, Inc.*, 2016 WL 1366952, *6 (E.D. Cal. Apr. 6, 2016) (citation omitted). Here, all of the notice packets were delivered, all class members will receive a settlement payment, and no objections or requests for exclusion have been filed. Doc. 35 at 3. There is no evidence to indicate that any class member is dissatisfied with the proposed settlement.

Plaintiff encourages the Court to consider the class representative's reaction. Doc. 22 at 25. Although a class representative has no veto power, the Court should consider any support or opposition to the settlement by a class representative. *See* Manual Complex Lit. § 21.642 (4th ed. 2016). Mr. Avila has spent approximately 112 hours assisting class counsel and supports the settlement. Doc. 33-3 at 6.

The reaction of the class members and class representative to the settlement has been positive. This factor weighs in favor of settlement.

*g. Absence of Collusion*

Where, as here, a settlement is negotiated before class certification, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to

---

[3] "Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." *Smith v. American Greetings Corp.*, 2016 WL 2909429, *5 n 5 (N.D. Cal. May 19, 2016) (quoting Principles of the Law of Aggregate Litigation § 3.05 comment (a) (2010)).

infect the negotiations." *In re Bluetooth*, 654 F.3d at 946.[4] The operative settlement agreement has no reversion and no clear sailing provision. The fees sought by counsel, although higher than the benchmark in this Circuit, do not indicate collusion between counsel. Although not dispositive, the fact that this action was taken to mediation tends to indicate that the resolution is not a product of collusion. *See Vargas v. Central Freight Lines, Inc.*, 2017 WL 4271893, *7 (S.D. Cal. Sept. 25, 2017).

The Court is satisfied that this settlement agreement is not a product of collusion. This factor weighs in favor of approval of the settlement agreement.

*h. Conclusion*

The Court finds that the factors set forth by the Ninth Circuit weigh in favor of final approval of the settlement. The settlement is fair, reasonable and adequate as required by Rule 23. Final approval of the settlement agreement will be granted.

## IV. Fees, Costs, and Representative Service Payment

Plaintiff moves for an award of attorneys' fees and costs, and a class representative service payment for the class representative. Class counsel seeks attorneys' fees in the amount of $166,666.66, amounting to thirty-three percent of the gross fund value. Plaintiff also requests reimbursement for litigation costs in the amount of $6,125.05. Finally, Plaintiff requests a representative service award in the amount of $5,000.00. Plaintiff's motion will be granted in part.

**A. Attorneys' Fees**

Rule 23(h) permits the court to "award reasonable attorney's fees and nontaxable costs" in a class action when they "are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Even if the parties agree on the amount of a fees award, a district court has an obligation to consider the fees award in the context of the settlement agreement to ensure that it is reasonable. *See In Re Bluetooth*, 654 F.3d at 941. Where the settlement agreement creates a common fund, a "district court 'has the discretion to apply either the lodestar method or the

---

[4] The *In re Bluetooth* court instructs district courts to look for disproportionate settlement amounts, clear sailing provisions, and reversionary funds, among other things. *In re Bluetooth*, 654 F.3d at 947.

percentage-of-the-fund method in calculating the fee award.'" *Stetson v. Grissom*, --- F.3d ----,
2016 WL 2731587, *4 (9th Cir. May 11, 2016) (quoting *Fischel v. Equitable Life Assurance
Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002)). Despite the discretion afforded to the court, the Ninth
Circuit recommends that district courts cross-check the award by applying the second method.
*In Re Bluetooth*, 654 F.3d at 944-945.

1. Percentage of the Fund Method.

This Court will apply the percentage-of-the-fund method and cross-check by calculating
the lodestar. The "benchmark" award under the percentage-of-the-fund method is twenty-five
percent of the fund. *Stetson*, 2016 WL 2731587 at *4; *In Re Bluetooth*, 654 F.3d at 942.[5] A
district court may "adjust upward or downward to account for any unusual circumstances
involved in the case." *Stetson*, 2016 WL 2731587 at *4; *Six (6) Mexican Workers v. Ariz. Citrus
Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Factors that would justify departure from the
benchmark include, "the benefit obtained for the class," the risk due to the complexity and
novelty of the issues presented, "the risk of nonpayment," and awards granted in similar cases. *In
Re Bluetooth*, 654 F.3d at 942 (citations omitted); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,
1048 (9th Cir. 2002). Chief among those considerations is the benefit to the class. *In Re
Bluetooth*, 654 F.3d at 942 (citing, *inter alia*, *Hensley v. Eckerhart*, 461 U.S. 424, 434-436
(1983)).

As noted, Plaintiff seeks thirty-three percent of the gross fund amount in fees. That
amount exceeds the benchmark; in order to award that percentage of the gross fund, the Court
must find that unusual circumstances justify the departure. Class counsel argues that the
departure is justified because "(1) [c]lass [c]ounsel have obtained a superb result for the [class
members]; (2) they faced considerable risks in prosecuting this litigation; (3) they displayed
skillful representation and high-quality work that resulted in this [settlement]…; and (4) [they]
carried the heavy financial burden of representing Plaintiff and the [class members] on a

---

[5] Counsel cites *Ontiveros v. Zamora*, 303 F.R.D. 356, 372 (E.D. Cal. 2014) for the proposition that "Class Counsel's
request for one-third of the" gross fund value "is well within the range customarily approved by California courts in
comparable class actions. In *Ontiveros*, the Court expressly declined grant fees in the amount of 33% of the gross
fund. Nothing that such a fee would award a lodestar multiple of two, the court instead applied the benchmark
percentage award of 25%. *Ontiveros*, 303 F.R.D. at 374-375.

contingency basis." Doc. 33 at 8. Further, class counsel contends, its lodestar calculation supports the fee award of $166,666.66. Doc. 33 at 8.

First, the Court looks to the benefit imparted upon the class. The average recovery per class member of $3,340.82 is higher than the recovery in most similar actions. *See, e.g.*, *Thompson v. Costco Wholesale Corp.*, 2017 WL 3840342, *6 (S.D. Cal. Sept. 1, 2017) (approving a settlement with an average recovery of roughly $1700.00 per class member in a similar action); *Emmons v. Quest Diagnostics Clinical Laboratories, Inc.*, 2017 WL 749018, at *9 (E.D. Cal. 2017). *Chavez v. PVH Corp.*, 2015 WL 9258144, *2 (N.D. Cal. 2015) (approving a settlement with a recovery of approximately $130.00 per class member in a similar action); *Taylor v. FedEx Freight, Inc.*, 2016 WL 6038949, *4 (E.D. Ca. Oct. 13, 2016) (approving a settlement with a recovery of approximately $2,600.00 per class member in a similar action); *Barbosa v. Cargill Meat Solutions Corp*, 297 F.R.D. 431, 440 (E.D. Cal. 2013) (granting a 33% fees award where the approximate recovery was just over $600 per class member in a similar action). However, the net payout to the class is, at best, 16% of the maximum class recovery (excluding potentially duplicative PAGA penalties); *see also Morales v. Steveco, Inc.*, 2013 WL 1222058, *2 (E.D. Cal. Mar. 25, 2013) (noting that an average recovery of roughly $4,300.00 per class member in a wage and hour class action weighs in favor of an award above the benchmark). Class counsel achieved a strong outcome for the class. The absence of any objections to the settlement supports that conclusion. *See National Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004). This consideration weighs in favor of granting a fee award above the benchmark.

Next, the Court considers the risks involved with litigating this action. As the Court noted, some risk for counsel existed in prevailing on the merits in light of the apparent vote taken regarding implementation of an alternative work schedule, undercutting Plaintiff's claim. Similarly, the apparent lack of consistency regarding the regularity of missed or denied meal periods caused some risk of failed class certification. Those risks are a result of the facts of the action, not complexity or novelty of legal issues. Indeed, legally, this action was relatively

straight forward.  This consideration does not weigh in favor of granting a fee award above the benchmark.

The Court also looks to the contingent nature of the representation. Class counsel accepted this action on a contingency basis in August of 2016. Doc. 33-1 at 12. In that way, it encountered a risk of non-payment and forewent other employment to advance this action. This factor weighs in favor of granting a fee award above the benchmark. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002).

Courts in this Circuit have awarded attorneys' fees amounting to 33% of the gross fund where such an award does not greatly exceed the lodestar and the recovery for the class is substantial. *See, e.g.*, *Richardson*, 2016 WL 1366952, *12 (awarding 30% of the gross fund amount as attorneys' fees where the per-class member award was substantial); *Barbosa*, 297 F.R.D. at 450 (collecting cases in this district that have granted approximately 33% of the gross fund). However, the amount sought in attorney fees would yield a lodestar multiplier of roughly three (when the rates are adjusted to match the relevant legal community).

The strong results achieved, the favorable reaction of the class, that class counsel litigated this matter on contingency for nearly two years all support a fee award above the benchmark. However, the adjusted lodestar is significantly lower the fee award sought. *See Section IV(A)(2), infra.*

2. Lodestar Calculation

Although not required of a district court, often district courts conduct a lodestar cross-check to ensure that the percentage based fee is reasonable. *See Yamada v. Nobel Biocare Holding AG*, --- F.3d ----, 2016 WL 1579705 (9th Cir. Apr. 20, 2016); *Crawford v. Astrue*, 586 F.3d 1142, 1151 (9th Cir. 2009) (the district court may conduct a lodestar cross-check as an aid in assessing the reasonableness of the fee). The lodestar amount is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Gonzales v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The district court must then determine whether to apply a risk multiplier. *See Yamada*, 2016 WL 1579705, *6 (The court may apply a multiplier to adjust the lodestar figure considering reasonableness factors such as: "the quality of representation, the

benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.") (citation omitted); *see also Stetson*, 2016 WL 2731587, *5 ("The district court must apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.' Failure to apply a risk multiplier in cases that meet these criteria is an abuse of discretion.") (citation omitted).

*a. Reasonable Number of Hours*

Class counsel spent approximately 178 hours litigating this matter and preparing the settlement.[6] Counsel's time was expended conducting informal and formal discovery, drafting pleadings, communicating with Plaintiff and class members, conducting case management tasks, conducting research, engaging in mediation, and negotiating settlement. Doc. 33-1 at 14-15. The bulk of the time was spent drafting pleadings. All of these items are reasonable uses of counsel's time. The information provided does not disclose any substantial redundancies in counsel's use of time. *See also Stetson*, 2016 WL 2731587, *5 ("[T]he district court should take into account the reality that some amount of duplicative work is 'inherent in the process of litigating over time.'") (citation omitted).

*b. Reasonable Rate*

A district court is required to determine a reasonable rate for the services provided by examining the prevailing rates in the community, charged by "lawyers of reasonably comparable skill, experience, and reputation." *Sanchez v. Frito Lay*, 2015 WL 4662535, *17 (E.D. Cal. Aug. 5, 2016) (quoting *Cotton v. City of Eureka*, 889 F.Supp.2d 1154, 1167 (N.D. Cal 2012)). "The 'relevant community' for the purposes of determining the reasonable hourly rate is the district in which the lawsuit proceeds." *Sanchez*, 2015 WL 4662535, *17 (quoting *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir.1997)); *accord Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). When a case is filed in the Fresno Division of the Eastern District of California, the hourly rate is compared against attorneys practicing in the Fresno Division of the Eastern District

---

[6] Class Counsel provides a breakdown of the hours allocated to each task and a breakdown of hours billed by each assigned attorney.

of California. *See, Munoz v. Giumarra Vineyards Corp.*, 2017 WL 2665075, * 17 (E.D. Cal. June 21, 2017); *Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009). In the Fresno Division of the Eastern District, the hourly rate for competent and experienced attorneys is between $250 and $400, "with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Silvester v. Harris*, 2014 WL 7239371, *4 (E.D. Cal. Dec. 17, 2014) (collecting cases); *see Archer v. Gibson*, 2015 WL 9473409, *13-14 n. 6 (E.D. Cal. Dec. 28, 2015) ("A current reasonable range of attorneys' fees, depending on the attorney's experience and expertise, is between $250 and $400 per hour, and $300 is the upper range for competent attorneys with approximately 10 years of experience.")

Class counsel has requested hourly fees as follows: for Richard Hoyer, a partner with Hoyer & Hicks, in practice since 1990, a rate of $700.00 per hour; Walter Haines, an attorney with United Employees Law Group, in practice since 1976, a rate of $650.00 per hour; for Ryan Hicks, a partner with Hoyer & Hicks, in practice since 2008, a rate of $500.00 per hour; for Jennifer McGuire, a former associate at Hoyer & Hicks, in practice since 2012, a rate of $350.00 per hour; for Nicholas Lansdown, a former associate at Hoyer & Hicks, in practice since 2016, a rate of $150 per hour. Doc. 33-1 at 8-9; Doc 33-2 at 2-3.

Mr. Hoyer declares that he has reviewed the rates of others in the San Francisco Bay Area to conclude that the rates sought by those in his firm are reasonable. As noted, the Fresno Division of the Eastern District of California is the relevant legal community. *See Juarez v. Villafan*, 2017 WL 6629539, *18 (E.D. Cal. Dec. 29, 2017) (collecting cases); *Munoz*, 2017 WL 2665075 at * 16. The Court only looks outside of the relevant community if local counsel was "'unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Munoz*, 2017 WL 2665075 at *17 (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)). Mr. Hoyer has made no such showing. He merely notes that his firm is "mostly contacted via the internet by potential clients who presumably have been able to find local counsel who litigate plaintiff-side wage and hour class actions…." Doc. 31-1 at 13. He does not establish—or attempt

to establish—that this action required unique expertise that could not be obtained locally. Mr. Avila indicates in his declaration that he "contacted a number of local attorneys in the area in hopes that one of them would take" his case, however, "all of them refused to take the case…." Doc. 33-3 at 2-3. Such a showing is well short of the showing made in *Gates* where the plaintiffs "offered numerous declarations of San Francisco and Sacramento attorneys which directly support[ed] their contention that Sacramento attorneys and law firms with the requisite expertise and expierence to handle" the type of complex litigation at issue were "unavailable" *Gates*, 987 F.2d at 1405-1406; *accord California Sportfishing Protection Alliance v. Chico Scrap Metal, Inc.*, 2016 WL 105252, *2 (E.D. Cal. Jan. 8, 2016) (explaining that the plaintiff's conclusory declaration regarding his attempt to retain local counsel—which was more detailed than Mr. Avila's declaration here—did not support a finding that local counsel was unavailable).

Mr. Haines directs the Court to a case within this Division where he was awarded attorney fees at a rate of $625.00 per hour.[7] However, from the Court's own inquiry, it appears that Mr. Haines was awarded fees at a rate not exceeding $400.00 per hour more often than not. *See, e.g.*, *Mitchinson v. Love's Travel Stops*, 2017 WL 2289342, *7 (E.D. Cal. May 25, 2017) (finding a rate of $400 per hour for Mr. Haines was appropriate); *Morgret v. Applus Tech., Inc.*, 2015 WL 3466389, at *17 (E.D. Cal. June 1, 2015) (finding a rate of $380 per hour for Mr. Haines was appropriate). That rate is appropriate.

The fee rates in excess of $400.00 are above the prevailing rates in the Fresno Division of this District for attorneys with commensurate experience and expertise. *See Sanchez v. Frito-Lay, Inc.*, 2015 WL 4662636, *18 (E.D. Cal. Aug. 5, 2015), report and recommendation adopted, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015) (finding reasonable rate for attorney with twenty years of experience was $350 per hour in a wage and hour class action); *Verduzco v. Ford Motor Co.*, 2015 WL 4131384, at *4 (E.D. Cal. July 9, 2015) report and recommendation adopted, 2015 WL 4557419 (E.D. Cal. July 28, 2015) (awarding attorney with over 40 years of experience $380.00 per hour); *Silvester v. Harris*, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17, 2014)

---

[7] *See Novoa v. Charter Comm'ns, LLC*, 1:13-cv-1302, Doc. 65 (E.D. Cal. June 6, 2016). The order awarding the fee award did not discuss whether the rate sought was reasonable.

(awarding attorneys with twenty years of experience $335.00 and $375.00 per hour); *Willis v. City of Fresno,* 2014 WL 3563310, at *12 (E.D. Cal. July 17, 2014) adhered to on reconsideration, 2014 WL 4211087 (E.D. Cal. Aug. 26, 2014) (awarding attorneys with over twenty five years of experience $380.00 per hour); *Jadwin v. County of Kern,* 767 F.Supp.2d 1069, 1169 (E.D. Cal. 2011) (finding an hourly rate of $350.00 is near the top range of hourly rates in the Fresno Division and awarding $380.00 per hour to an attorney with 40 years of experience). The fee rate sought for the services of Ms. McGuire is also above the prevailing rate for an attorney with her experience and expertise. *See Silvester,* 2014 WL 7239371 at *4, n.2 (An acceptable rate "for an attorney with less than ten years of experience" ranges "between $175 to $300" per hour.")

A reasonable fee for Mr. Hoyer is $400.00 per hour; a reasonable fee for Mr. Haines is $400.00 per hour; a reasonable rate for Mr. Hicks is $350.00 per hour; a reasonable rate for Ms. McGuire is $250.00 per hour; a reasonable rate for Mr. Lansdown is $150.00 per hour. *E.g., Williams v. Ruan Transport Corp.*, 2013 WL 6623254, at *6 (E.D.Cal. Dec.16, 2013) (awarding $375.00 per hour to attorney with over thirty years of experience and $325.00 per hour to attorney with fifteen years of experience in employment action).

*c. Adjusted Lodestar Calculation*

Based on the 24 hours that Mr. Hoyer has reasonably spent on this litigation, billed at a rate of $400.00 an hour; the 16.25 hours that Mr. Haines has reasonably spent on this litigation, billed at a rate of $400.00 an hour; the 72.1 hours that Mr. Hicks has reasonably spent on this litigation, billed at a rate of $350.00 per hour; the 58.6 hours that Ms. McGuire reasonably spent on this litigation, billed at a rate of $250.00 per hour; and the 7.3 hours that Mr. Lansdown reasonably spent on this litigation, billed at a rate of $150 per hour, the lodestar amount is $57,080.00 ($9,600.00 + $6,500.00 + $25,235.00 + $14,650.00 + $1095.00). In order to award the requested fee award of $166,666.66, the Court would have to apply a multiplier of approximately three.

"A strong presumption exists that the lodestar" calculation, without application of a multiplier, "is a reasonable fee." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir.

1987). "[U]pward adjustments of the lodestar are proper only in 'rare' and 'exceptional' cases, supported by specific evidence on the record and detailed findings by the district court." *Jordan*, 815 F.2d at 1262 (quoting *Blum v. Stenson*, 465 U.S. 886, 898-901 (1984) To determine if a lodestar multiplier is reasonable, courts in this Circuit must consider the twelve *Kerr* factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975);

Although the relevant *Kerr* factors were discussed above in considering the percentage of the fund method, the Court briefly considers each. Class counsel spent a relatively limited amount of time of this action. The legal questions involved were not particularly complex. Counsel is skilled and experienced. Counsel customarily charges a rate higher than this district routinely permits. Counsel's customary rate is high, in part because it takes matters on contingency. Counsel has not indicated that Mr. Avila or the factual setting of this action imposed any time limitations. The results obtained for the class are strong. Apparently, some attorneys in the local legal community declined to take the action. The benchmark in this Circuit, and the ordinary award when the percentage of the fund calculation exceeds the lodestar calculation, is to award twenty five percent of the gross fund amount.

In light of the strong result for the class, the favorable class reaction, and counsel's willingness to take the matter on contingency, the Court will award attorney at twenty eight percent (28%) of the gross fund: $140,000.00. That figure represents a relatively high lodestar modifier of approximately two and a half and a percentage above the benchmark to recognize class counsel's considerable efforts but avoids awarding "windfall profits for class counsel in light of the [limited number of] hours spent on the case." *In re Bluetooth*, 654 F. 3d at 942. The remaining five percent difference (between the amount sought and amount awarded) of the gross

fund will be distributed between the class members using the formula agreed upon in the settlement agreement.

**B. Litigation Costs**

"[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Norris v. Mazzola,* 2017 WL 6493091, * 14 (N.D. Cal. Dec. 19, 2017); *Sanchez*, 2015 WL 4662636, *20; *accord Smith*, 2016 WL 2909429, *9 ("An attorney is entitled to 'recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client.'") (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). Such expenses regularly include postage, investigation costs, copying costs, hotel bills, meal, messenger services, court costs, electronic research, court reporter costs, delivery fees, and mediation expenses. *See, e.g., Ruiz v. XPO Last Mile, Inc.*, 2017 WL 6513962, *8 (S.D. Cal. Dec. 20, 2017); *Leverage v. Traeger Pellet Grills, LLC*, 2017 WL 6405619, *7 (N.D. Cal. Dec. 15, 2017).

Class Counsel has submitted an itemized list of expenses. Doc. 33 at 24; Doc. 33-1 at 17. The itemized costs include filing fees, service costs, electronic research, and mediation fees. Those costs are reasonable litigation expenses. Counsel's request for costs in the amount of $6,124.05 will be granted.

**C. Representative Service Award**

Representative service awards are "fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009); *see Staton*, 327 F.3d at 977. Granting a service award is discretionary; in doing so the court should consider the time and effort expended by the named plaintiff, and the risk undertaken in serving as named plaintiff. *Staton*, 327 F.3d at 977; *In re Mego*, 213 F.3d at 463. The court should also consider the amount of the service award as compared to the average recovery of the class. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947. Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant "reputational risk" by bringing suit against their present or former employers. *Rodriguez*, 563 F.3d at 958–59.

In this case, the class representative has participated extensively in the prosecution of this action on behalf of the class. Doc. 33-3. Specifically, he assisted in gathering information, discussed the action with counsel, interacted with other of Defendant's employees regarding the action, and provided the documentation that he had in his possession regarding Defendant's wage policies. Doc. 33-3 at 2-6.

A service award of $5,000.00 is requested for Mr. Avila. That figure is presumptively reasonable in this Circuit. *Richardson*, 2016 WL 1366952, *13 (citing *Harris v. Vector Marketing Corp*., 2012 WL 381202, *7 (N.D. Cal. Feb. 6, 2012)); *see In re Online DVD-Rental Antitrust Litig*., 779 F.3d at 947. Moreover, the proposed incentive award is not dramatically higher than the average class member award.

For those reasons, the representative service award of $5,000.00 will be granted to Mr. Avila.

**D. Administration Costs**

Courts routinely award administrative costs associated with providing notice to the class. *E.g.*, *Schuchardt v. Law Office of Rory W. Clark*, 2016 WL 1701349, *17 (N.D. Cal. Apr. 28, 2016); *Odrick v. Union Bancal Corp*., 2012 WL 6019495, *7 (N.D. Cal. Dec. 3, 2012). The settlement provides for up to $8,500.00 to be paid to CPT Group, Inc., as settlement administrator. That amount is reasonable and will be awarded.

<strong>V. Order</strong>

Based on the foregoing, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion for Final Approval of the Settlement Agreement is GRANTED;

2. Plaintiff's request for certification of the Settlement Class is GRANTED and defined as follows:

> All non-exempt positions at Cold Spring facilities in Raymond, California and Clovis, California from October 11, 2012 through August 16, 2017.

3. The above-defined settlement class has met all of the Rule 23(a) and (b)(3) requirements;

4. The terms of the proposed Settlement Agreement are found to be fair, adequate and reasonable and comply with Rule 23(e) of the Federal Rules of Civil Procedure;

5. The notice provided to the settlement class members, as well as the means by which it was provided, constitutes the best notice practicable under the circumstances and is in full compliance with the United States Constitution and the requirements of Due Process and Rule 23 of the Federal Rules of Civil Procedure. Further, that such notice fully and accurately informed settlement class members of all material elements of the lawsuit and proposed class action settlement, and each member's right and opportunity to object to the proposed class action settlement;

6. Plaintiff's motion for attorneys' fees, costs, and representative service award is GRANTED in part and DENIED in part;

7. Plaintiff Joseph Avila is appointed as a suitable class representative for the settlement class and awarded $5,000.00 as a representative service payment;

8. Hoyer & Hicks and United Employees Law Group, PC are appointed as class counsel for the settlement class, and are awarded $140,000.00 in attorneys' fees and $6,124.05 in costs;

9. The settlement administrator CPT Group, Inc., is awarded to up to $8,500.00 for settlement administration costs;

10. The Court directs the parties to effectuate the settlement terms as set forth in the Settlement Agreement, integrating into the class member payment the additional five percent of the gross fund amount sought but not awarded to class counsel, and the settlement administrator to calculate and pay the claims of the class members in accordance with the terms set forth in the Settlement Agreement and the following schedule:

| Effective Date | February 15, 2018 |
|---|---|
| Defendant to wire the Gross Settlement Fund to CPT Group | No later than March 1, 2018 |
| Fees and costs, Class Representative awards, Call awards to be paid by CPT Group | No later than March 15, 2018 |
| CPT to stop payment on checks for Class Members who | 120 days after |

| | |
|---|---|
| receive a payment but do not cash the settlement check. CPT to transmit the funds designated for but not paid to class members to the State of California's Unclaimed Property Fund. | issuance of class awards. |

11. By means of this Final Approval Order, this Court hereby enters final judgment in this action, as defined in Rule 58(a)(1), Federal Rules of Civil Procedure;

12. The Court retains jurisdiction to consider all further applications arising out of or in connection with the Settlement.

IT IS SO ORDERED.

Dated:   January 11, 2018   

_____

SENIOR  DISTRICT  JUDGE